MRS. VERA LOUISE LITTLE, WIDOW, AND NEXT FRIEND OF JUDITH ANN LITTLE, DAUGHTER OF ARTHUR HERMAN LITTLE, DECEASED, EMPLOYEE, v. POWER BRAKE COMPANY, INCORPORATED, EMPLOYER, AND UNITED STATES CASUALTY COMPANY.

(Filed 11 October, 1961.)

**1. Evidence § 30—**

In order for a declaration to be competent as a part of the *res gestae* it must be shown that the declaration was spontaneous, made contemporaneously with the transaction or so closely connected with it as to be a part thereof, and that it be relevant to the fact sought to be proved.

**2. Same; Master and Servant § 53—**

A statement by an employee some nine hours before departing upon the trip in question that the employee had to be going because he had to call on some customers in a specified town that day, is too far removed from

the transaction to be competent as a part of the *res gestae* to prove the purpose or destination of the trip.

**3. Same—**

A declaration by an employee that he was going to a particular town to attend to some business is not competent to prove than an accident occurring some four miles the other side of the town specified occurred on a trip made by the employee in the course of his employment, since the declaration does not disclose what business the employee intended to transact, and therefore was not relevant to the issue of whether the trip was on business for the employer, there being other evidence raising a surmise that the trip was made pursuant to personal business of the employee.

**4. Same—**

A declaration of the employee over long-distance telephone to his wife that the employee "was going to call on some more customers" is incompetent to prove that a trip started some half hour thereafter was made pursuant to the employment, since the statement was not so immediately connected with his actual departure as to preclude a change in the employee's purpose or design, and was not so connected with the transaction as to constitute a part of the *res gestae*, particularly in view of the fact that the fatal accident occurred outside of the employee's regular selling territory, at night outside his regular working hours.

**5. Appeal and Error § 38—**

Assignments of error not brought forward and discussed in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

APPEAL by claimants from *Sharp, S.J.*, 23 January 1961 Special Term of MECKLENBURG.

A proceeding for workmen's compensation on account of the death by accident of Arthur Herman Little, an employee of Power Brake Company, Inc., for whom United States Casualty Company is the insurance carrier.

The parties stipulated the jurisdictional facts, and they were found as such by the hearing deputy commissioner.

This is a summary of other facts found by the hearing deputy commissioner: Arthur Herman Little was a salesman of Power Brake Company, selling and servicing truck parts and heavy machinery. His employer had six salesmen — three working out of the Charlotte office and three out of the Raleigh office. Arthur Herman Little's assigned territory was east of Charlotte to Laurinburg. Shelby Stephenson, a salesman from the Raleigh office, sold in the Lumberton-Whiteville-Fayetteville area, and he called on customers in this area every two or three weeks. On one occasion prior to July 1956 Arthur Herman Little called on two customers in Lumberton. On the morning of 8 January 1957 Arthur Herman Little left Charlotte driving a station

wagon owned by his employer, and in the course of his employment went to Laurinburg. He carried in the station wagon catalogues, samples, and other material he used in selling. In Laurinburg about 10:00 o'clock a.m. he called on a customer, H. F. Hoffman, and stayed with him about 45 minutes. At 5:15 o'clock p.m. he went to the Trade Winds Motel in Laurinburg, and registered as a guest. He then drove to Bill Adams' service station in Laurinburg and purchased gas for the station wagon. While there he talked with the attendant, Z. R. Jackson, about ten minutes. He then returned to the motel, and from there talked to his wife in Charlotte by telephone. After that he went to the motel's office, and there T. T. McNair, manager of the motel, pointed out to him on a North Carolina highway map a route from Laurinburg to Lumberton to Elizabethtown to White Lake to Burgaw, a distance of about 115 miles. Little's parents-in-law lived six miles north of Burgaw, and he and his wife had not seen or talked with them since two or three days before Christmas 1956. Little then went into the motel dining room, ate supper, came out, talked with McNair three or four minutes, and drove away from the motel in the station wagon at 7:30 p.m. o'clock.

The hearing deputy commissioner found as facts from a stipulation of the parties that Little was killed by accident about 8:25 p.m. o'clock on 8 January 1957 at or near the intersection of N. C. Highway 41 and a rural paved road, known as "Wiregrass Road" about four miles south of the city limits of Lumberton, when the station wagon he was driving east crossed the intersection and hit a tree. Based on such findings of fact the hearing deputy commissioner found Little's death by accident did not arise out of his employment, nor occur in the course of his employment.

The hearing deputy commissioner was of opinion there was not sufficient competent evidence to show where Little was going or for what purpose. The defendants apparently contended he was going to see his wife's parents near Burgaw, but in his opinion a finding to that effect would be based upon mere suspicion and conjecture. Claimants apparently contended he was going to make a business call, though it was at night, outside his regular working hours, and outside his regular selling territory, but in his opinion a finding to that effect would be based upon a mere suspicion and conjecture.

The hearing deputy commissioner concluded as a matter of law that the burden of proof was on claimants, and to make a valid claim they were required to show, (1) injury by accident, (2) suffered in the course of decedent's employment, and (3) arising out of his employment, and that they had failed to show the second and third requisites

for recovery, and therefore they are not entitled to an award of compensation. Whereupon, he denied claimants' claim.

Upon appeal by claimants to the Full Commission, the Full Commission overruled all claimants' assignments of error, held that the hearing deputy commissioner's findings of fact are supported by competent evidence, that his conclusions of law are without prejudicial error, and adopted as its own his findings of fact and conclusions of law, and affirmed his decision denying claimants' claim for compensation.

Upon appeal by claimants to the Superior Court Judge Sharp entered a judgment affirming the decision of the Full Commission, denying compensation to claimants.

From the judgment claimants appeal.

*Carswell & Justice By: James F. Justice and B. Kermit Caldwell for plaintiffs, appellants.*

*Henry & Henry By: Everett L. Henry for defendants, appellees.*

PARKER, J.  Claimants assign as errors the exclusion by the court of the following statements made by the deceased employee, offered by them to show the purpose of his trip, and that he was engaged in work for his employer at the time of his death.

One. On the day of his death the deceased employee called on H. F. Hoffman, a customer, at Laurinburg about 10:00 o'clock a.m., and stayed about 45 minutes. As he prepared to leave he said, "I've got to be going along, I've got to be down at Whiteville to see a customer sometime today."

Two. About 7:00 o'clock p.m. on the day of his death the deceased employee bought some gas at Bill Adams' service station in Laurinburg. While there he told Z. R. Jackson, who worked there, the following: "He told me he was going to Lumberton and would see me when he came back through, wanted to know if I stayed open all night. He didn't specify no certain place he was going in Lumberton. Said he had a little business to attend to in Lumberton. All he said to me, he would be back and he would see me when he came back that night, wanted to know if I stayed open all night and I told him yes."

Three. As the deceased employee was leaving his home in Charlotte he told his wife he would call her from there, and he did. Around 7:00 p.m. o'clock the day of his death the deceased employee talked to his wife in Charlotte by telephone from the motel in Laurinburg, and told her: "He said that he was going to call on some more customers, so that he wouldn't have to spend another night. He had been down, hadn't been down there since before Christmas and he was behind and

he didn't want to stay over another night." She also testified: "My husband had been to Laurinburg before in his work for Power Brake Company and beyond Laurinburg as far as Whiteville and Lumberton," which was excluded.

The rule that statements made by a person since deceased, as to the purpose or destination of a trip or journey he is about to make, may be proved as part of the *res gestae* when connected with the act of departure, has been recognized and given effect in the admission of such testimony in a considerable number of cases, and the evidence has been excluded in a number of other cases because not part of the *res gestae*, though recognizing the rule. *Gassaway v. Gassaway & Owen, Inc.*, 220 N.C. 694, 18 S.E. 2d 120; Anno. 113 A.L.R. 268-310, an elaborate annotation where a very large number of cases are cited and analyzed; Anno. 163 A.L.R. 21-25; Jones on Evidence, 2nd Ed., Vol. III, § 1220. Other theories for the admission of such statements have been propounded, but the "theory of *res gestae* is by far the most popular theory of admission, though possibly not as well reasoned as the theory that the declarations are admissible as original evidence, as an exception to the hearsay rule." Anno. 113 A.L.R. 275. An extraordinary development in the literature of *res gestae* was Dean Wigmore's wholesale denunciation of the term itself. Evidence, 2nd Ed., § 1767. However, it is said in annotation 163 A.L.R. 20, "The bench and bar in general have not agreed with Dean Wigmore."

In *Gassaway v. Gassaway & Owen, Inc., supra*, a workmen's compensation case, claimants relied on statements made by deceased two days and one day prior to his departure for High Point to obtain a contract, to show that at the time of his death he was engaged in his work as an employee. The Court said: "These statements were not made at the time of and were not immediately connected with the actual departure. They were no part of the *res gestae*, and were inadmissible. (Citing authority). Nor were they admissible as dying declarations under C.S., 160. To be admissible as a part of the *res gestae* it must be made to appear that the statement was made at the time of the starting of the journey, as to the purpose or destination of the trip he is then about to make. It must be connected with the act of departure. Anno. 13 A.L.R., 273-275. (Sic. Should be 113 A.L.R.). When not so made they constitute no part of the *res gestae* and are inadmissible. Anno. 113 A.L.R., 281."

This Court said in *Coley v. Phillips*, 224 N.C. 618, 31 S.E. 2d 757: "For a declaration to be competent as part of the *res gestae*, at least three qualifying conditions must concur: (a) The declaration must be of such spontaneous character as to be a sufficient safeguard of its trustworthiness; that is, preclude the likelihood of reflection and fabri-

cation; 32 C.J.S., pp. 45, 46, *supra;* instinctive rather than narrative; *Queen v. Ins. Co.,* 177 N.C. 34, 97 S.E. 741; *Summerrow v. Baruch,* 128 N.C. 202, 38 S.E. 861; (b) it must be contemporaneous with the transaction, or so closely connected with the main fact as to be practically inseparable therefrom; *Queen v. Ins. Co., supra;* and (c) must have some relevancy to the fact sought to be proved. It must be remembered that to be admissible the declaration must be a *part* of the *res gestae* — not merely *amongst* the *res gestae* — that is, it must be so interwoven into the transaction that it may be vested with the significance of a fact — that is, one of the *'res gestae'* or 'things done.' They are called 'verbal facts' or 'verbal acts.' 20 Am. Jur., Evidence, sec. 664. If not of this character, its mere nearness to the transaction in point of time has no significance. No rule of universal application can be devised as to the time element; but the principle of relevancy to the fact sought to be proved by it admits of no relaxation. *Holmes v. Wharton,* 194 N.C. 470, 140 S.E. 93, 76 A.L.R., 1125 (Anno.)."

The deceased employee left the motel in Laurinburg on his fatal trip about 7:30 p.m. o'clock. His statement to H. F. Hoffman about 10:45 a.m. o'clock, "I've got to be going along, I've got to be down at Whiteville to see a customer sometime today," was not connected with his act of departure at 7:30 p.m. o'clock, constitutes no part of the *res gestae,* and was inadmissible.

The deceased employee after buying gas and talking with Z. R. Jackson at a service station went back to the motel, from there talked to his wife in Charlotte by telephone, went to the motel's office, and there T. T. McNair, manager of the motel, pointed out to him on a North Carolina highway map a route from Laurinburg to Lumberton, to Elizabethtown to White Lake to Burgaw, a distance of about 115 miles. His parents-in-law lived six miles north of Burgaw. He then ate supper in the motel dining room, and left on his fatal trip at 7:30 p.m. o'clock. In his statement to Jackson he said he was going to Lumberton and had a little business to attend to there, but he did not say it was his employer's business, or where he was going to in Lumberton. In our opinion, his statement to Jackson was not connected with his act of departure at 7:30 p.m. o'clock, and constitutes no part of the *res gestae,* and we are fortified in our opinion by the fact that he was killed by accident about four miles south of the city limits of Lumberton. In addition, claimants offered this evidence for the purpose of showing the purpose of his trip, and that he was engaged in work for his employer at the time of his death, but his statement to Jackson does not say what his business was in Lumberton, and has no relevancy to the fact sought to be proved. It was properly excluded.

We now come to his statement by telephone to his wife around 7:00

o'clock p.m., "that he was going to call on some more customers, so that he wouldn't have to spend another night, etc." He did not state who these customers were, or where they lived. After this conversation he went to the motel's office, and its manager pointed out to him on a North Carolina highway map a route from Laurinburg to Burgaw, near which place his parents-in-law lived. He then ate supper, and left. He was killed outside his regular selling territory by accident about an hour and a half later.

In *Prater v. Traders & General Ins. Co.*, (Tex. Civil App.), 83 S.W. 2d 1038, a case relied upon by claimants in their brief, appears this language: "It is sufficient if the declaration appears to have been made in a natural manner without circumstances of suspicion and purports to evidence the declarant's existing state of mind with reference to the purpose of the proposed journey and there be such proximity between the time of the making of the declaration and the incident involved in the suit as, under the circumstances, will furnish reasonable assurance that there has been no change of purposes or designs in the meantime." Citing authorities.

The facts found furnish no reasonable assurance that deceased employee had not changed his purpose or design to call on some more customers so he wouldn't have to spend another night, as he told his wife, before he left on his fatal trip after supper. Whether he did, or whether he did not, is left in the realm of conjecture and guesswork. In our opinion, and we so hold, under all the facts found, his statement to his wife was not immediately connected with his actual departure at 7:30 p.m. o'clock and not so interwoven into his departure that it is vested with the significance of a fact, so as to constitute a part of the *res gestae*, particularly as he was killed by accident outside his regular selling territory. It was properly excluded.

Claimants' other assignments of error brought forward and discussed in their brief have been carefully examined, and are overruled. The assignments of error not brought forward and discussed in their brief are deemed to be abandoned. Rules of Practice in the Supreme Court, 221 N.C. 544, 563, Rule 28.

The findings of fact are supported by sufficient competent evidence, and they in turn support the conclusions of law, and the judgment.

The following testimony by Mrs. Nan B. Simpkins, president and general manager of Power Brake Company, may cast some light upon this tragic accident: "On the following day I went with Mr. Barnette to Mrs. Little's home where I had a conversation with Mrs. Little. Mrs. Little felt awfully remorseful about Herman — Herman's death. And she hated she told Herman about her father being ill, that she felt like had she not have said that he wouldn't have tried to make

a trip. There was several people in the room including a doctor. Her father lived at Burgaw. She told me she had talked to Mr. Little, but did not say whether he made it or she made it, over the telephone." However, the widow, Mrs. Little, testified on cross-examination: "I saw Mrs. Simpkins the day following January 8th but made no statement to her that if I had not told my husband about my father, my husband would still be here . . . I do not recall having a conversation with Mrs. Simpkins in the presence of Mr. Barnette."

The judgment below is

Affirmed.